**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| NATIONAL FOUNDATION FOR SPECIAL<br>NEEDS INTEGRITY, INC., | ) | |
| | ) | |
| Plaintiff/Counter Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-00545-TWP-DKL |
| | ) | |
| DEVON C. REESE, as the Personal Representative<br>for THE ESTATE OF THERESA A. GIVENS,<br>deceased, | ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |

**ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT AND**
**MOTION FOR LEAVE TO FILE SUR-REPLY**

Pending before the Court are three motions: a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Plaintiff National Foundation for Special Needs Integrity, Inc. ("National Foundation") (Filing No. 54), a Cross Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendant Devon Reese, as Personal Representative of the Estate of Theresa Givens ("Reese") (Filing No. 66), and a Motion for Leave to File a Sur-Reply filed by National Foundation (Filing No. 74). For the following reasons, the Court **GRANTS** in part and **DENIES** in part National Foundation's Motion for Summary Judgment, **DENIES** Reese's Motion for Summary Judgment, and **DENIES** National Foundation's Motion for Leave to File Sur-Reply.

## I.    BACKGROUND

National Foundation is a not-for-profit corporation whose purpose is to act as trustee to pooled special needs trusts. A special needs trust is a trust created for the benefit of a beneficiary with a disability who is receiving means-tested governmental benefits, such as Supplemental

Security Income or Medicaid. A special needs trust protects a disabled person's eligibility for current or future public benefits while simultaneously allowing the person with disabilities access to additional funds to pay for expenses not covered by public benefits. The trust property of numerous trust beneficiaries (called "members") is "pooled" for the purpose of custody, management, and investment in accordance with 42 U.S.C. §1396(d)(4)(C). A separate "sub-account" is established and administered for the sole benefit of each specific trust member. At the time of a pooled trust member's death, the funds remaining in the deceased member's sub-account must be used to pay back Medicaid, and if funds still remain after repayment, the funds either: (a) remain in the pooled trust for the benefit of the other pooled trust members, or (b) can be distributed to others pursuant to the beneficiary's wishes that are clearly stated in the trust documents.

Theresa Givens ("Givens") was a forty-nine year old, unmarried mother of three adult children, who was severely injured in 2009 by the medical use of Gladolium dye. (Filing No. 69 at 2.) Givens filed a products liability lawsuit and was represented by Brown & Crouppen law firm. The suit resulted in Givens receiving $254,847.76 in net settlement proceeds. Prior to receiving the settlement, Givens' attorneys at Brown & Crouppen, gave her the name of both National Foundation and Midwest Special Needs Trust to discuss distribution her settlement benefit. (Filing No. 64-4 at 2.)

On or about June 1, 2011, Givens contacted Shane Service ("Service"), National Foundation's then-general counsel, and informed Service that she had six goals for her settlement funds. (Filing No. 64-5 at 1.) Givens advised Service that she wished to use her settlement funds to purchase: 1) a primary residence; 2) a home for her son; 3) an income-producing storefront property; 4) two cars; 5) a vacation; 6) and saving bonds of an undisclosed amount for her three

children and all of her grandchildren.  *Id*.  Givens also informed Service that she wanted to purchase an annuity with the left over proceeds and to live off the interest.  *Id.*

After speaking with Givens, Service emailed Andee McGaughey ("McGaughey"), the paralegal at Brown & Crouppen, who was assigned to Givens' case.  *Id.*  In the email, Service reminded McGaughey that a special needs trust is subject to the sole benefit rule and cannot be used for the primary benefit of anyone other than the beneficiary.  *Id.* at 2.  Service informed Givens that, given her stated goals, a special need trust might not be the proper vehicle for her because it would not allow Givens to purchase housing for her family members, give gifts to her children and grandchildren, and would only allow her to purchase one vehicle.  *Id.*

On July 11, 2011, Givens met with her attorneys at Brown & Crouppen who advised that the settlement funds needed to be placed in the trust so that Givens would not lose her public health benefits.  ([Filing No. 64-6](#).)  On July 20, 2011, despite the advice of counsel regarding the risk of losing her needs based government benefits, Givens instructed Brown & Crouppen to place only $184,000.00 in a special needs trust and distribute the remaining portion by check made payable to her.  ([Filing No. 64-7](#).)  Givens informed her attorneys that she intended to use the funds that were not placed in the trust to pay off her debts, open a bank account, buy a car for her daughter, and give $50,000.00 to her son.  ([Filing No. 64-11 at 36](#); [Filing No. 24-1](#).)  Eight days later, on July 28, 2011, Givens then instructed Brown & Crouppen to place her entire settlement into a special needs trust.  ([Filing No. 64-8](#).)  McGaughey testified that, on that same day, Givens informed McGaughey that she was frustrated with her children because she felt that she was being pressured by them to give them her settlement funds.  ([Filing No. 64-11 at 7-8](#).)  Givens also told McGaughey that she was afraid her children would take the money, she would be left without anything and that she could have everything taken away from her. *Id*.

On August 9, 2011, Givens executed a Joinder agreement, thereby joining the pooled trust operated by National Foundation.  (Filing No. 55; Filing No. 69 at 3.)  McGaughey signed the document as a witness. Although Brown & Crouppen was her legal counsel, at the time she completed the Joinder agreement an attorney was not present.  Givens listed herself as the only "contingent/remainder/residual" beneficiary.  *Id.*  The pertinent provisions in the Joinder Agreement state as follow:

**IV. DISTRIBUTIONS UPON THE DEATH OF THE BENEFICIARY**
Amounts remaining in the trust upon the death of the Beneficiary shall be distributed in accordance with §13611(b) of the Omnibus Budget Reconciliation Act of 1993 (OBRA), Public Law 103-66, codified at 42 U.S.C. §1396p(d)(4)(C). Accordingly, to the extent that amounts remaining in the beneficiary's account upon the death of the Beneficiary are not retained by the trust, the trust shall pay to the state of Missouri such remaining amounts in the account an amount equal to the total amount of medical assistance paid on behalf of the Beneficiary under the State of Missouri's Medicaid plan.

Except in the event that this Article Fourteen may be in the future amended to effectuate the letter, spirit and purpose of 42 U.S.C. §1396p(d)(4)(C)(iv), the National Foundation for Special Needs Integrity, Inc. shall not retain any portion of the Beneficiary's trust Sub-Account upon his or her death. Rather, all such amounts shall be reimbursed to the state of Missouri, by and through the Missouri Department of Health and Family Services, up to the full amount that it has expended on the Beneficiary, both before and after the creation of this trust.
If any money remains after the state of Missouri has been reimbursed in full, said money shall be distributed in accordance with Section V, below.

If no secondary Contingent/Residual/Remainder Beneficiaries survive or if none are named in Section V below, then and only then shall said money remain with the trust.
* * *
If any amounts remain after the state of Missouri (and any other state that may receive proportionate reimbursement pursuant to Section 14.2 of the accompanying Declaration of Trust) has been reimbursed in full, as described above, the remaining amounts shall be distributed in accordance with the Joinder Agreement under which the Beneficiary has enrolled in the pooled trust.

(Filing No. 1-2 at 13).

**V.     CONTINGENT/REMAINDER/RESIDUAL BENEFICIARIES**

Please tell us below to whom you would like us to pay out the Remainder of your Sub-Account should there be any money left after the state of Missouri has been reimbursed for the Medicaid services it has rendered to you during your lifetime. *This person can be an individual person, such as a family member; or an organization, such as a favorite church or charity.* YOU MUST NAME AN ACTUAL PERSON OR ENTITY. DO NOT WRITE VAGUE DESCRIPTIONS OF CLASSES OF PESONS, SUCH AS "MY HEIRS AT LAW," OR "MY ISSUE" OR "A YET TO BE IDENTIFIED CHARTIABLE ORGANIZATION."

**Contingent/Remainder/Residual Beneficiary #1:**

| | |
|---|---|
| Name: | <u>Theresa Givens</u> |
| Address: | <u>1723 Cochran Place</u> <br> <u>St. Louis, MO 63106</u> |
| Telephone Number: <br> (Include Area Code) | <u>314-484-2558</u> |
| Percentage: | <u>100%</u> |

If you name more than one Contingent/Remainder/Residual Beneficiary, please check to make sure the percentages add up to 100%.

Any Remainder shares for a Contingent/Remainder/Residual Beneficiary named in this section who does not survive the Beneficiary will lapse and be distributed in equal shares to all other named Contingent/Remainder/Residual Beneficiaries.

*Id.* at 14. On October 10, 2011, Givens deposited approximately $250,000.00 into her trust sub-account. (Filing No. 69 at 2.) Sadly, on November 19, 2011, just a few weeks after funding the trust, Givens died intestate. *Id.* at 1. As a result, at the time of her death, approximately $235,000.00 was left in her trust sub-account, with no repayment being due to Medicaid. *Id.* at 4, 6.

On or about November 23, 2011, Givens' personal injury attorneys at Brown & Crouppen spoke with Service regarding distribution of the remaining trust funds to Givens' adult children. (*Id.* at 4-5; Filing No. 69-10.) At that time, National Foundation informed Givens' attorneys that Givens had designated herself as the remainder beneficiary. *Id.* As a result, National Foundation

stated that it would not distribute the funds to Givens' adult children but would, instead, retain the funds in the trust's remainder share account for the benefit of other pooled trust members, consistent with the terms of the trust document.  *Id.*

Devon Reese ("Reese") is one of Givens' three adult children.  (Filing No. 69 at 3.)  On November 14, 2012, Reese opened an estate for Givens and was appointed the personal representative of the estate.  (Filing No. 69-1 at 1.)  Reese did not file a lawsuit to recover the remaining trust funds.  Instead, on February 3, 2015, more than three years after Givens death and approximately two years after opening the estate, James A. Beckemeier, sent a demand letter to National Foundation on behalf of Givens' estate, asserting that Givens named herself as the remainder beneficiary by mistake.  (Filing No. 69-11.)  The letter states that Givens listed herself as the only beneficiary with the belief that the funds would be used to benefit her while she was alive, and the remainder would be distributed to her children upon her death.  *Id.*  Reese asserts that Service admitted as much during a telephone call on November 23, 2011 in which Service stated that he believed Theresa was confused when she named herself as the beneficiary.  (Filing No. 69-10.)  In reply, on March 20, 2015, National Foundation sent a letter to Mr. Beckemeier, stating that it properly retained Givens' remainder funds because Givens did not name a secondary or contingent beneficiary.  (Filing No. 69-12.)

Thereafter, on April 6, 2015, National Foundation filed this action seeking a declaration that the transfer of the funds into the trust's remainder share account was proper.  (Filing No. 1.)  On June 29, 2015, Reese filed a counterclaim for recovery of the remaining trust funds.  (Filing No. 11; Filing No. 24.)  In particular, Reese seeks reformation and deviation of the trust funds to reflect, what he believes are, the true wishes of Givens.  *Id.*  National Foundation moves for summary judgment declaring that the remainder share in Givens' sub-account should be disbursed

in accordance with the Joinder Agreement and summary judgment on Reese's counterclaims. Likewise, Reese seeks summary judgement on its counterclaims.

## II.   <u>LEGAL ANALYSIS</u>

The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 106 S. Ct. 1348 (1986). Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007) (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

These same standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs.*,

335 F.3d 643, 647 (7th Cir. 2003).  The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648.  "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

### III.   DISCUSSION

National Foundation moves this Court for summary judgment, asserting that Givens' remainder funds were properly disbursed in accordance with the plain language of the Joinder Agreement.  National Foundation specifically seeks a declaratory judgement that the transfer of Givens' remainder share to National Foundation's trust account was proper.  On the other hand, Reese moves this Court for summary judgment, asserting that Givens' clear intent was for the balance of her trust funds to go to her children and that National Foundation's refusal to disburse the funds to the Estate was inappropriate.  Reese specifically requests the Court to reform the trust or to deviate from the terms of the trust to reflect Givens' intent.

### A.   Four-Corners of the Trust Documents

National Foundation asserts that Givens' children are not entitled to Givens' trust remainder because Givens' remainder funds were properly disbursed in accordance with the plain language of the Joinder Agreement.  "The interpretation of a trust is a question of law for the court." *Paloutzian v. Taggart,* 931 N.E.2d 921, 925 (Ind.Ct.App.2010).  The primary purpose of a court in construing a trust instrument is to ascertain and give effect to the settlor's intention. *Kristoff v. Centier Bank*, 985 N.E.2d 20, 23 (Ind. Ct. App. 2013).  "Indiana follows 'the four corners rule' that extrinsic evidence is not admissible to add to, vary or explain the terms of a

written instrument if the terms of the instrument are susceptible of a clear and unambiguous construction." *Id*. (quoting *Hauck v. Second Nat'l Bank of Richmond*, 153 Ind.App. 245, 260, 286 N.E.2d 852, 861 (1972)).  Thus, if a trust document is capable of clear and unambiguous construction, a court must give effect to the trust's clear meaning without resort to extrinsic evidence.  *Id.*  Courts are not at liberty to rewrite the trust agreement.  *Id; see also Paloutzian*, 931 N.E.2d at 925.

National Foundation contends that the agreement clearly and unambiguously provides what will occur in the event that no living beneficiary is named in the Joinder Agreement. Specifically, upon the death of Givens "the remaining amounts shall be distributed in accordance with the Joinder Agreement under which the Beneficiary has enrolled in the pooled trust…" but "[i]f no secondary Contingent/Residual/Remainder Beneficiaries survive or none are named in Section V [], then and only then shall said money remain with the trust."  (Filing No. 55 at 5.) National Foundation argues that because Givens named only herself as the remainder beneficiary, the plain language of the agreement states that the money should remain with the trust.

In response, Reese contends that the trust agreement is ambiguous.  Reese asserts that Givens listed herself as the only beneficiary because Givens intended for the trust remainder to be distributed to her three children and did not intend for National Foundation to retain the trust remainder.  Section V of the trust agreement states:

> **V.    CONTINGENT/REMAINDER/RESIDUAL BENEFICIARIES:**
> Please tell us below to whom you would like us to pay out the Remainder of your Sub-Account should there be any money left after the state of Missouri has been reimbursed for the Medicaid services it has rendered to you during your lifetime. *This person can be an individual person, such as a family member; or an organization, such as a favorite church or charity*. YOU MUST NAME AN ACTUAL PERSON OR ENTITY. DO NOT WRITE VAGUE DESCRIPTIONS OF CLASSES OF PESONS, SUCH AS "MY HEIRS AT LAW," OR "MY ISSUE" OR "A YET TO BE IDENTIFIED CHARTIABLE ORGANIZATION."

**Contingent/Remainder/Residual Beneficiary #1:**

| | |
|---|---|
| Name: | <u>Theresa Givens</u> |
| Address: | <u>1723 Cochran Place</u><br><u>St. Louis, MO 63106</u> |
| Telephone Number:<br>(Include Area Code) | <u>314-484-2558</u> |
| Percentage: | <u>100%</u> |

If you name more than one Contingent/Remainder/Residual Beneficiary, please check to make sure the percentages add up to 100%.

Any Remainder shares for a Contingent/Remainder/Residual Beneficiary named in this section who does not survive the Beneficiary will lapse and be distributed in equal shares to all other named Contingent/Remainder/Residual Beneficiaries.

Reese argues that Givens designating herself as the only remainder beneficiary renders the above portion of the trust ambiguous because Givens cannot be a surviving beneficiary after her own death. Reese also asserts that the evidentiary record does not contain any evidence regarding the circumstances of Givens signing the agreement and neither of the attorneys involved in this matter, nor McGaughey, who witnessed Givens' signature on the Joinder Agreement, claim to have participated in or assisted with the completion or filling out of the Joinder Agreement. (Filing No. 69 at 10.) Reese further asserts there is no evidence in the record that Givens filled out the Joinder Agreement herself, thereby listing herself as the only remainder beneficiary. *Id.*

Finally, Reese argues that the trust agreement is ambiguous because there are multiple possible interpretations regarding the definition of "secondary" in Section IV of the agreement. Section IV of the agreement states:

**IV.   DISTRIBUTIONS UPON THE DEATH OF THE BENEFICIARY**
     Except in the event that this Article Fourteen may be in the future amended to effectuate the letter, spirit and purpose of 42 U.S.C. §1396p(d)(4)(C)(iv), ***the National Foundation for Special Needs Integrity, Inc. shall not retain any portion of the Beneficiary's trust Sub-Account upon his or her death.*** Rather, all

such amounts shall be reimbursed to the state of Missouri, by and through the Missouri Department of Health and Family Services, up to the full amount that it has expended on the Beneficiary, both before and after the creation of this trust. If any money remains after the state of Missouri has been reimbursed in full, said money shall be distributed in accordance with Section V, below.

**If no secondary Contingent/Residual/Remainder Beneficiaries survive or if none are named in Section V below, then and only then shall said money remain with the trust.**
***
If any amounts remain after the state of Missouri (and any other state that may receive proportionate reimbursement pursuant to Section 14.2 of the accompanying Declaration of Trust) has been reimbursed in full, as described above, *the remaining amounts shall be distributed in accordance with the Joinder Agreement under which the Beneficiary has enrolled in the pooled trust.*

(Filing No. 56-2 at 13) (emphasis added).  The term "secondary" is not defined within the agreement and, as such, Reese asserts that it is reasonable for a person to believe that the term "secondary" means "second."  Reese argues that Givens listing herself as the only remainder beneficiary, rather than listing a "second" beneficiary, amounts to Givens attempting to prevent National Foundation from receiving the trust remainder because the policy states that "[i]f no secondary [] Beneficiaries [] are named [], then and only then shall said money remain with the trust." (Filing No. 62 at 11-12; Filing No. 69 at 13.)  Reese asserts that the ambiguous construction of the agreement allowed Givens to name herself as primary remainder beneficiary in order for the remainder funds to be distributed to her estate, rather than to National Foundation.  Reese lastly contends that the trust contradicts itself when stating both that National Foundation will not retain any portion of a beneficiary's remainder funds and that National Foundation will retain a beneficiary's funds in certain circumstances.

In reply, National Foundation argues that Givens naming herself as remainder beneficiary does not change the analysis of the trust documents because the plain language of the trust document explains what will happen to the funds if no remainder beneficiary survives.  National

11

Foundation argues that, in Indiana, the primary rule of construction is to give words their plain and ordinary meaning. *AM General, LLC v. Amour*, 46 N.E.3d 436, 440 (Ind. 2015). "Clear and unambiguous terms in the contract are deemed conclusive, and when they are present [the court] will not construe or look to extrinsic evidence, but will merely apply the contractual provision." *Id.*

There is no dispute that Givens is the primary beneficiary of the trust and she was also named as the only secondary Contingent/Residual/Remainder beneficiary. National Foundation argues that the term "secondary beneficiary," is not ambiguous. Black's Law Dictionary defines a "secondary beneficiary" as "[t]he beneficiary next in line to collect should the primary beneficiary be unable to do so." BENEFICIARY, Black's Law Dictionary 940 (6th ed. 1991). National Foundation further argues that a "contingent beneficiary" is defined as a "[p]erson who may or will benefit if the primary beneficiary dies or otherwise loses rights as a beneficiary." *Id.* at 223. National Foundation lastly asserts that, when viewing the trust agreement as a whole, there is no contradiction in the agreement. National Foundation contends that federal law permits remainder funds to remain in the trust where no listed secondary beneficiary survived Givens. "To the extent that amounts remaining in the beneficiary's account upon the death of the beneficiary are not retained by the trust, the trust [shall pay] to the State from such remaining amounts in the account an amount equal to the total amount of medical assistance paid on behalf of the beneficiary under the State plan under this subchapter." 42 U.S.C.A. § 1396p(d)(4)(C)(iv).

The Court finds that the pertinent sections in the trust agreement are not contradictory and the term "secondary," in the context of a trust agreement, is not ambiguous. Givens listed herself as the only remainder beneficiary of the remainder trust. Givens did not list the names of her three children. Reese argues that Givens' intent for her children to receive the remainder funds is clearly

12

evident because Givens chose not to leave the "secondary beneficiary" section blank.  However, the Court finds that when looking solely at the four-corners of the trust document, it is not clearly evident that Givens intended for the trust funds to transfer to her surviving children because Givens listed only her name as the secondary beneficiary.  Accordingly, because the trust is unambiguous, Reese's motion for summary judgment is **denied** and National Foundation's motion for summary judgment is **granted in part** as the Court must address the counterclaims.

### B.    Counterclaims

Reese asserts that Givens made an obvious mistake by listing herself as the remainder beneficiary instead of her living children and, as such, he asserts the Court should reform the trust or deviate from the terms of the trust to reflect Givens' alleged intent to transfer the funds to her children.   National Foundation contends that Reese is not entitled to relief under either counterclaim, because Givens' intent at the time of executing the agreement is unknown and the counterclaims are barred by the doctrine of laches.

### 1.    Reformation

Reese requests reformation of the trust agreement, arguing that Givens clearly indicated a general intent that after her death the remaining settlement funds should go to her three children. "Written instruments are presumed to reflect the intentions of the parties to those instruments." *Estate of Reasor v. Putnam Cty.,* 635 N.E.2d 153, 158 (Ind. 1994).  However, even if an agreement is unambiguous, "a written instrument, including a trust, may be reformed on grounds of mistake upon 'clear and convincing evidence' not only of the mistake, but also of the original intent of the parties."  *Id*. at 160; *see also Carlson v. Sweeney, Dabagia, Donoghue, Thorne, Janes & Pagos*, 895 N.E.2d 1191, 1199-1200 (Ind. 2008).   "Evidence is clear and convincing if it leaves no

reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *In re Meyers*, 616 F.3d 626, 631 (7th Cir. 2010).

Reese argues that Givens designating herself as the only remainder beneficiary amounted to a mistake of law and fact. Reese contends that the designation was a clear legal mistake because Givens had to die in order for the remainder beneficiary to receive the trust funds and, as such, it is legally impossible for Givens to be a remainder beneficiary. Reese also argues that Givens listing herself as the remainder beneficiary was a mistake of fact because Givens intended for the remainder funds to transfer to her estate upon her death. "A unilateral mistake on the part of the settlor is ordinarily sufficient to warrant reformation." *Carlson v. Sweeney, Dabagia, Donoghue, Thorne, Janes & Pagos,* 895 N.E.2d 1191, 1199 (Ind. 2008)*.* Reese argues that there is clear evidence that Givens designated herself as remainder beneficiary by mistake because on June 1, 2011, two months before signing the trust document, Givens expressed to Service that she intended for the settlement funds to benefit her children. Service testified that he believed Givens mistakenly listed herself. Service further alleges that if a grantor named himself or herself as a remainder beneficiary, the normal practice and policy for National Foundation is to require the grantor to fix the mistake and name another party. (Filing No. 69-4 at 15). Reese asks the Court to remedy the alleged mistake by reforming Section V and replacing "Theresa Givens" as the named Contingent/Remainder/Residual Beneficiary with the "Estate of Theresa Givens" and order that the funds that remained in Givens' trust sub-account at her death be distributed to the Estate.

In response, National Foundation argues that Givens' statement to Service sheds no light on Givens' intent at the time the trust documents were executed. "The settlor's intent must be determined from the facts and circumstances surrounding the trust at the time of the execution of the trust." *Matter of Walz,* 423 N.E.2d 729, 733 (Ind. Ct. App. 1981). On August 9, 2011, Givens

14

executed the trust agreement.  National Foundation contends that Givens' statements to Service were two months prior to her signing the trust documents and, despite Service's contention that Givens made a mistake, Service admits that he is unaware of Givens' state of mind at the time of executing the trust agreement.  National Foundation also argues that after Givens' conversation with Service, and approximately one month before signing the trust documents, Givens informed McGaughey that she wanted to put all of the money into a trust because she was unhappy with her children and felt that they were going to take all of the money from her and leave her with nothing. (Filing No. 64-11 at 7-8.)

The Court finds that there is a genuine issue of material fact regarding Givens' intent at the time of executing the trust agreement.  Reese has produced no clear and convincing evidence that, at the time Givens signed the trust agreement, she intended the remainder funds to transfer to her children.  A genuine issue of material fact exists, therefore the parties cross motions for summary judgment regarding reformation is **denied**.

In the alternative, Reese argues that if this Court does not deem that there is clear and convincing evidence that Givens intended her children to be the beneficiaries of her remainder funds, then the Court should invalidate the entire trust.  However, there is no legal basis for Reese's' alternative request for rescission, so that request is **denied**.

### 2.    <u>Deviation</u>

Reese requests deviation from the terms of the trust, again asserting that Givens made a mistake in designating herself as the remainder beneficiary of her own trust.

> Upon petition by the trustee or a beneficiary, the court shall direct or permit the trustee to deviate from a term of the trust if, owing to circumstances not known to the settlor and not anticipated by him, compliance would defeat or substantially impair the accomplishment of the purposes of the trust. In that case, if necessary to carry out the purposes of the trust, the court may direct or permit the trustee to do

acts which are not authorized or are forbidden by the terms of the trust, or may
prohibit the trustee from performing acts required by the terms of the trust.

Ind. Code § 30-4-3-26(a).  Reese relies on *In re Stephen L. Chapman Irrevocable Trust Agreement,*

when arguing that Givens did not know or foresee that designating herself as the only remainder

beneficiary would create a legal impossibility.  *In re Stephen L. Chapman Irrevocable Trust*

*Agreement,* 953 N.E.2d 573, 581 (Ind. Ct. App. 2011) ("The types of unanticipated changes that

warrant application of the doctrine of equitable deviation include truly unforeseen events resulting

in economic hardship, the incapacity of a beneficiary, the impossibility or imprudence of a trust

provision, or the diminution in value of a trust asset.").  Reese further argues that Service admitted

that National Foundation should have caught the alleged mistake and required Givens to fix the

mistake.  Reese asserts that failure to deviate from the terms of the trust would defeat Givens'

primary purpose and intent to disburse the remainder funds to her children.

> The court may modify the administrative or dispositive terms of a trust if, because
> of circumstances not anticipated by the settlor, modification or termination will
> further the purposes of the trust. To the extent practicable, the modification must
> be made in accordance with the settlor's probable intention.

Ind. Code § 30–4–3–24.4(a).

In response, National Foundation argues that there are no unforeseen circumstances that

would warrant statutory deviation from the terms of Givens' trust.  National Foundation contends

that Reese has offered no clear and convincing evidence of what Givens intended at the time she

executed the trust agreement.  National Foundation further asserts that the trust documents clearly

state what shall occur in the event that no living beneficiary is named in agreement at the time of

Givens' death.  Specifically, the money shall remain in the trust.

The Court cannot say that under the plain language of the trust, Givens did not intend to

benefit her children.  Additionally, Reese has presented no evidence that Givens listing herself as

the only remainder beneficiary was unforeseen or not anticipated.  "When a trust instrument must be construed by a court, we attempt to discern the settlor's intent in light of the facts and circumstances at the time the instrument was executed."  *In re Stephen L. Chapman Irrevocable Trust Agreement*, 953 N.E.2d 573, 579 (Ind. Ct. App. 2011) (this could be a short cite).  Accordingly, the Court **denies** Reese's motion for summary judgment regarding deviation and grants National Foundation's motion for summary judgment on the issue of deviation.

### 3.     <u>Laches</u>

National Foundation moves this Court for summary judgment, asserting that Reese's counter claims are barred by the doctrine of laches.  Laches is an equitable defense that may be raised to stop a person from asserting a claim that he or she would normally be able to assert.  *Angel v. Powelson*, 977 N.E.2d 434, 445 (Ind. Ct. App. 2012) ("[l]aches is neglect for an unreasonable length of time, under circumstances permitting diligence, to do what the law should have done.").  The equitable defense of laches may bar an opposing party's claim if the defending party establishes: (1) an inexcusable delay in asserting a known right; (2) an implied waiver arising from knowing acquiescence in existing conditions; and (3) a change in circumstances causing prejudice to the adverse party.  *Id*.  A mere lapse in time is not sufficient to establish laches; it is also necessary to show an unreasonable delay that causes prejudice or injury.  *Id*.  Prejudice may be created if a party, with knowledge of the relevant facts, permits the passing of time to work a change of circumstances by the other party.  *Id*.

To begin, laches is an affirmative defense, which must be proven by National Foundation rather than Reese.  *Jeffries v. Chi. Transit Auth.*, 770 F.2d 676, 679 (7th Cir. 1985), *Sherman v. Standard Rate Data Serv., Inc.*, 709 F. Supp. 1433, 1441 n. 9 (N.D. Ill. 1989).  The Seventh Circuit has held that generally, the affirmative defense of laches is not properly evaluated pursuant to a

motion for summary judgment, but summary judgment is proper when no genuine factual issues

are in dispute.  *See Topping v. Fry*, 147 F.2d 715, 718 (7th Cir. 1945). *See also Jeffries*, 770 F.2d

at 679 ("[l]aches is generally a factual question not subject to summary judgment", noting that

delay and prejudice are factual issues"); *Superior Paintless Dent Removal, Inc. v. Superior Dent

Removal, Inc.*, 454 F. Supp. 2d 769, 771-72 (N.D. Ill. 2006) (declining to apply a laches defense

pursuant to a motion to dismiss, even after acknowledging that the elements may have been met);

*Sherman*, 709 F. Supp. at 1441 ("laches is a factual question which generally is not subject to

resolution at the summary judgment stage let alone the pleadings stage").

On a motion for summary judgment, the moving party must demonstrate that there are no

genuine issues of material fact relating either to inexcusable delay or material prejudice. *Massey-

Ferguson,* 622 F.2d at 276; *Boone v. Mechanical Specialties Co.,* 609 F.2d 956, 957 (9th Cir.1979).

Givens died on November 19, 2011.  On November 23, 2011, Givens' attorney contacted National

Foundation about transferring the funds to Givens' children.  On that day, National Foundation

confirmed that Givens designated herself as the remainder beneficiary, which prevented National

Foundation from distributing the trust funds to Givens' children.  On November 14, 2012, Givens'

children hired an attorney and opened an estate.  On February 3, 2015, Reese sent a formal demand

to National Foundation for the trust funds.  Reese's counterclaims were filed in June 2015.

National Foundation argues that the doctrine of laches applies because Reese admits that

he was aware prior to November 14, 2012 that National Foundation was keeping the remainder

funds.  (Filing No. 64-10 at 24.)  Reese also admits that there was no excuse for waiting two and

a half years to file a formal demand.  *Id.* at 28.  National Foundation additionally alleges that there

has been a change in circumstances that would have an adverse effect on it – and, in turn, its trust

members – if the Court ordered reformation of the trust or deviation from its terms.  National

18

Foundation contends that Givens' remainder funds were transferred to National Foundation's operating account in January 2013 and February 2014 – and then used for payroll and other administrative expenses.  National Foundation relies on *Alexander v. Lewis*, 685 F.3d 325, 348-49 (3d Cir. 2012), when arguing that its use of the funds to pay its payroll and other expenses is permissible under federal law.  ("Retaining the residual enables the trust to cover administrative fees and other overhead without increasing charges on accounts of living beneficiaries.").

In reply, Reese asserts that it was not clear to Givens' estate that National Foundation was retaining the remainder trust funds until National Foundation formally communicated its intention directly to the estate on March 20, 2015.  Reese relies on the deposition testimony of Service that National Foundation had not made a determination about what to do with the funds remaining in Givens' trust account as of August 2014, when Service left National Foundation. Reese argues that the estate has not waived its rights to the remainder funds and National Foundation has presented no legitimate evidence regarding its change in circumstances that resulted in prejudice.   In asserting that National Foundation is not prejudiced because National Foundation is required to make payroll and to pay administrative expenses regardless of whether or not it retained Givens' funds Reese cites *The Nature Conservancy v. Wilder Corp. of Del.*, 656 F.3d 646 (7th Cir. 2011). "A plaintiff's delay must have prejudiced and misled the defendant, or caused him to pursue a different course from what he otherwise would have taken in order for laches to apply."  *The Nature Conservancy,* at 649.

There remains a question of fact as to whether there was an inexcusable delay by Reese in asserting a right to the trust funds and National Foundation has presented no evidence that paying its payroll and other expenses amounted to a change in circumstances causing prejudice.

Accordingly, without more facts, the issue of laches is improper for determination on summary judgment.

**C.**     **Motion for Leave to File a Sur-Reply**

The Court now considers the Motion for Leave to File a Sur-Reply (Filing No. 74) filed by National Foundation after Reese filed his Reply Brief in support of his Motion for Summary Judgment. National Foundation asks the Court for permission to file a sur-reply because Reese's Reply Brief relied on *Lasater v. House*, 805 N.E.2d 824 (Ind. Ct. App. 2004), *transfer granted, opinion vacated,* 822 N.E.2d 977 (Ind. 2004), and *opinion aff'd in part, vacated in part,* 841 N.E.2d 553 (Ind. 2006). National Foundation correctly asserts that the opinion is no longer good law.

After careful review of all the briefing, the Court concludes that no new legal arguments were raised for the first time in Reese's Reply Brief in support of the Motion for Summary Judgment. The Court is fully aware that the *Lasater* decision was vacated and is capable of analyzing that case and giving it appropriate considering without the additional filing of a sur-reply brief. Finally, the Court also notes that it did not use the *Lasater* decision in resolving the Motions for Summary Judgment. For these reasons, the Court **denies** the Motion for Leave to File a Sur-Reply (Filing No. 74).

## IV.     CONCLUSION

For the aforementioned reasons, the Court **GRANTS** in part and **DENIES** in part National Foundation's Motion for Summary Judgment (Filing No. 54). The Court **DENIES** Reese's Motion for Summary Judgment (Filing No. 66), and **DENIES** National Foundation's Motion for Leave to File Sur-Reply (Filing No. 74). The Court agrees that the pertinent sections of the trust agreement are unambiguous and that National Foundation has complied with the plain language of the trust documents; however, there is a genuine issue of material fact regarding Givens' intent and whether

equity in the form of reformation should intervene. On the defense of laches, the Court concludes that there remains a genuine issue of material fact as to inexcusable delay, to an implied waiver and prejudice.  The issues remaining for trial are the following:

1.   Reese's counterclaim for reformation.

2.   National Foundations defense of laches as to the counterclaim.

**SO ORDERED.**

Date: 10/26/2016

DISTRIBUTION:

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Jamie A. Maddox
BETZ & ASSOCIATES
jmaddox@betzadvocates.com

Kevin W. Betz
BETZ & BLEVINS
kbetz@betzadvocates.com

Wanda E. Jones
JONES LAW OFFICES
wej@indianajoneslaw.com

David W. Gray
LEWIS & KAPPES PC
dgray@lewis-kappes.com

Matthew S. Tarkington
LEWIS & KAPPES PC
mtarkington@lewis-kappes.com

Suzanne R. Gaidoo
LEWIS & KAPPES PC
sgaidoo@lewis-kappes.com

James A. Beckemeier
THE BECKEMEIER LAW FIRM, LC
jbeckemeier@rlblaw.com